No. 56.—SAMUEL WARNER, plaintiff in error, *vs.* JOHN ROBERTSON, defendant in error.

[1.] Whenever there is any legal and competent evidence submitted to the Jury by the Court, for their consideration, applicable to the question at issue between the parties, and a verdict is found by the Jury upon such evidence, the Court has not the legal authority to set aside the verdict and grant a new trial, on the ground that the verdict of the Jury was without evidence.

[2.] In this State, the Court decides the law, and the Jury are the exclusive judges of the facts submitted to them by the Court, on the trial of civil cases.

Bill for account and relief. Verdict on appeal, for Samuel Warner, the plaintiff below. Motion for a new trial, and decision by Judge STARNES, at Chambers, June 11, 1853, granting a new trial.

Samuel Warner filed a bill in Equity, in Richmond Superior Court, against John Robertson, averring substantially, that in April, 1842, he owed money which he was unable to pay immediately, and was threatened with suits by various persons; that knowing complainant to, be illiterate and without education, Robertson, the defendant, worked upon his fears, hoping to induce him to make some arrangement by which defendant might fraudulently gain an advantage; that an agreement was entered into, by which Robertson was to pay off the debts of Warner, and Warner was to give Robertson a mortgage upon certain slaves, named in the bill, to secure him against loss; that on the 15th of April, 1842, Warner gave Robertson a bill of sale of these negroes, but that Robertson fraudulently procured this bill of sale to be made an absolute and unconditional one; that on the ensuing day, being dissatisfied with the instrument he had given, he went to Robertson to obtain from him some evidence in writing, that the transaction was to be considered as a mortgage of these negroes, when Robertson gave him a certificate to the effect, that whenever

all demands of Robertson upon Warner, were paid off, the property in the negroes was to be restored to Warner.

The bill prayed, that the contract between the parties might be decreed a mortgage, and that Robertson might be held to account for the negroes and their hire, in the settlement.

Robertson, in his answer, denied all fraud, or intention to defraud; denied that the agreement between the parties was an agreement for a mortgage, but declared that it was a contract for absolute sale; that a valuation was put upon the negroes by the parties, a valuation insisted by the defendant to be a fair one; and that defendant, after engaging to pay off the debts of Warner, gave him his note at twelve months, for $1271.54 cts. the estimated balance in favor of Warner, after deducting from the value of the negroes the amount of Warner's supposed indebtedness; that this note had been fully satisfied in the course of a year after it had matured, by advances and goods sold to Warner, and that the agreement made on the 16th April, 1842, with Warner, was made at the solicitation of Warner, and was intended by both the parties, as only an agreement that Warner might re-purchase-the negroes on certain terms.

At the first trial of the cause, the Jury found for the complainant; an appeal was entered, and at the trial on appeal, the Jury again found for the complainants.

A new trial was moved for the defendant, and embodied in the motion is a brief of the evidence in the cause, agreed upon by counsel.

The new trial was moved for by the defendant, on the following grounds, viz:

I. Because the finding of the Jury is contrary to evidence:

1st. In this, that having in evidence before them a bill of sale, absolute on its face, from complainant to defendant, defendant's note for $1271.54, payable to complainant, and actually delivered to him—proven to be part of consideration of said bill of sale, subsequently taken up by defendant; they have treated such bill of sale as if it were only a mortgage.

2d. In this, that such finding is contrary to the uncontradicted answer of the defendant, and the acts and declarations of the complainant, at and after the execution of said bill of sale.

II. Because such finding of the Jury is without evidence:

In this, that the Jury, as appears from their finding, if they did not hold said bill of sale to be a mortgage *ab initio,* have erroneously treated the paper executed by defendant, on the 16th day of April, 1842, as if connected by *way of defeasance,* with the said absolute bill of sale of the day previous; whereas, there was no evidence of such connexion.

III. Because the finding of the Jury is against the weight of evidence:

In this, that by their finding, it appears that they have treated the original contract of the 15th April, 1842, as a mortgage, *ab initio,* or as converted into a mortgage, by the instrument executed by the defendant, on the 16th day of the same month; whereas, the first mentioned paper, on its face, and all the acts and sayings of the parties at the time of its execution, and all the circumstances attending the same, characterized it as an absolute bill of sale; and all the acts and sayings of the complainant and defendant at the time of the execution of the second paper, of April 16th, 1842, and subsequently thereto, show, that if it had reference to, and at all affected the subject matter of the preceding contract, it was only by adding thereto, for the benefit of complainant, a new and distinct agreement, giving him the right to re-purchase on certain conditions.

IV. Because the finding of the Jury is contrary to law:

1st. In this, that they have treated the bill of sale under which defendant claims, as a mortgage, while being on its face an absolute bill of sale, it could not by parol evidence be shown to be of any other character, but on *proof of fraud, accident, or mistake,* and there was no proof of either.

2d. In this, that while a contract absolute on the face, cannot be changed into a mortgage by the execution of any other instrument, unless such instrument be of like dignity, in the nature of a defeasance and part of the original contract. The

Jury, without the adduction of any such instrument, or any proof thereof, have treated such sale, though absolute in form, as a mere mortgage in its legal effect.

3d. In this, that if the instrument signed by the defendant, on the 16th day of April, 1842, the day after the execution of the bill of sale, had any effect on the subject matter of such sale, it was not by way of defeasance, but of stipulation for a new right, viz : that of a re-purchase ; whereas the Jury have, against law, given it the character of a defeasance.

V. Because the finding of the Jury is contrary to the charge of the Conrt :

In this, that His Honor, the presiding Judge, having, in a previous part of his charge, instructed the Jury in substance, that it was only necessary for them to determine whether this, (meaning the paper *first* executed,) was an absolute bill of sale, or a mortgage, or conditional bill of sale from the beginning ; subsequently, in substance charged, that to enable them to regard the transaction as a mortgage, they must find a debt *due at the time,* by complainant to defendant. And the Jury, as appears by their verdict, did regard it as a mortgage, altho' there was no evidence offered which could have enabled them to find that there was such a debt.

VI. Because the Court erred in its charge to the Jury :

In this, that being requested by defendant's counsel to charge that where there is a bill of sale, absolute on its face, in relation to which a memorandum is made, the next day after its execution, (such as that signed by the vendee in this case,) such memorandum does not make the bill of sale a mortgage, but if it has any legal effect on the prior sale, merely couples therewith a new agreement, giving to vendor a right to re-purchase. His Honor, the Judge, charged in substance, that it was only necessary for the Jury to determine, whether or not, this was an absolute bill of sale from the beginning, executed as such in good faith, or was from the beginning a mortgage or conditional sale, and in so charging, failed to recognize the difference between a mortgage or conditional sale,

and a contract for a re-sale, as prayed by defendant's counsel.

At the trial, the complainant offered the following testimony:

1st. The bill of sale from Samuel Warner to John Robertson, dated 15th April, 1842.

GEORGIA, RICHMOND COUNTY:

Rec'd, April the fifteenth, eighteen hundred and forty-two, from John Robertson, the sum of seventeen hundred and fifty dollars, in full for the following negro slaves, to wit: Betsey, a negro woman aged about thirty years; Charles, a negro boy, aged about fifteen years; Maria a girl, aged about twelve years; Ben, a negro boy, aged about eleven years; Eliza, a negro girl, aged about seven years; Mary, a negro girl, aged about three years; and Bill, a negro boy, aged about two years; said Charles, Maria, Ben, Eliza, Mary, and Bill, being all the children of the said negro woman, Betsey—the right and title to which said negro slaves, I promise to warrant and defend to the said John Robertson, his heirs and assigns, forever, against all persons whomsoever, and I do likewise warrant all of said negro slaves to be sound and healthy in all respects.

Witness my hand and seal,        his

SAMUEL X WARNER. [L.S.]

mark.

Signed, sealed and delivered in ⎫
    presence of                 ⎬
T. W. MILLER, Notary Public. ⎭

2d. Note of John Robertson to Samuel Warner:

$1271.54.                       AUGUSTA, April 15, 1842.

Twelve months after date, I promise to pay to Samuel Warner, or order, the sum of twelve hundred and seventy-one dollars and fifty-four cents, for value received.

JOHN ROBERTSON.

3d. John Robertson's instrument of 16th April, 1842.

The said bargain between Samuel Warner and John Robertson, is to certify that whenever the said Warner pays all demands that the said John Robertson holds against the said Warner, the property is to be refunded back to the said Warner.                    JOHN ROBERTSON.

This, April 16th, 1842.

4th. Samuel Warner's note to John Robertson, of 16th April, 1842.

$528.33.                    AUGUSTA, Richmond Co. Ga.

Twelve months after date, I promise to pay John Robertson, or bearer, five hundred and twenty-eight dollars and thirty-three cents, for value received.      his

                    SAMUEL X WARNER.
                              mark

This, 16th April, 1842.

5th. The following portions of the answer of defendant, to wit:

"This defendant admits that the complainant is an illiterate man, and he seemed much concerned on account of his pecuniary embarrassments, which he represented as being the cause of his desire to sell his slaves.

"Defendant further admits as true, as charged in complainant's bill, the possession by this defendant, of the slaves, Charles, Maria, Eliza and Ben, from the time of the sale, as aforesaid, to the present time."

From defendant's amended answer to bill:

"This defendant answering, says, that this defendant did, on the day after the purchase by him of the slaves named in said bill of sale, execute and deliver to complainant, the paper marked B, and at the same time, received from him his note for five hundred and twenty-eight dollars and thirty-three cents, given for the amount of cash paid to, or advances made

for, complainant, on the day previous, in addition to his note for $1271.54, then given to him.

6th. The following admitted to be the evidence of Andrew J. Miller:

"Before the suit commenced, Mr. Miller, under authority of complainant, called on R. to ascertain what was due him by W. proposing to pay what was due; Mr. Miller, treating, in the interviews, the bill of sale as a mortgage, Mr. R. declined going into any account with him, contending that he held the negroes under an absolute bill of sale."

7th. From the depositions of John Knight, examined 10th day of January, 1851:

"Witness had some conversation with Robertson, in relation to Warner's affairs, at his store in Augusta, in June or July, 1844. Witness asked him what Warner was worth if his debts were paid?—he said Warner was worth some seven or eight negroes. Witness asked him if Warner could pay his debts, without selling his negroes? Robertson replied, he could if he had good luck, and further said, complainant had lost his wife and got somewhat behind hand. He *supposed* what Warner owed was *to him.*

Dwelling and out-houses were all repaired, and some pulled down and put up anew. The value of improvements made by complainant, was $140. The place was enhanced in value by the improvements, $450. Before Warner went there, it was worth $100, and after being improved by Warner, $550 to $600. It was worth nothing in rent before, but afterwards, was worth $30 per year.

The names, ages and value, of the negroes in dispute, in Burke, and in possession of Warner:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Betsey, | about | 40 or 50 | years of age, | | | valued | at | $650. |
| Julia, | " | 13 or 14 | " | " | " | " | " | 650. |
| Billy, | " | 10 or 11 | " | " | " | " | " | 650. |
| Jim, | " | 8 or 9 | " | " | " | " | " | 400. |
| John, | " | 6 | " | " | " | " | " | 300. |
| Harriet, | " | 3 or 4 | " | " | " | " | " | 200. |
| Boy child, | | 1 or little more | " | | " | " | " | 100. |

Annual hire as follows : Betsey, with all the children with her till last year, nothing.   Something ought to have been paid for keeping them, say $35 or $40—last year, (1850,) and now, per annum, all about $100."

8th. William Kelly's depositions.   Witness examined 10th day of January, 1851 :

Witness had some conversation with John Robertson, in relation to Samuel Warner's affairs ; it was in Augusta, Richmond County, about October or November, 1847.   Witness asked Robertson about the following negroes : a man Charles, a boy Ben, Maria, a woman, and Eliza, a girl, then in Robertson's possession, whether they were said Warner's ?   He said yes, that Mr. Warner, complainant, was indebted to him a small amount, and whenever Mr. Warner settled with him, he could have possession of the negroes.   He said Warner was indebted to him a small amount.   Warner made improvements on the place, repairing dwelling and out-houses ; they were worth at least $140, and were done at Robertson's request.   After the improvements, the place was worth $400 ; before, about $150.   Worth nothing in rent before the improvements, but afterwards, $30 per annum. The slaves' names, ages, value and hire, in Burke, same as testified to by John Knight.

Those in possession of Robertson, in Richmond County, with their names, ages and value :

Charles, about 27 years of age, worth.................$1200
Maria (and child,) she about 22 years of age, worth   900
Ben, about 19 years of age, worth........................   900
Eliza, about 16 years of age, worth......................   600

Hire as follows :  Betsey, and the rest in Burke County, worth nothing until last year, but worth not less than $40 to keep them.   Last year, (1850,) and now, Betsey and all worth about $100 per annum.

Those in Richmond :  Charles, per annum, now......$150
Maria and child, if living......   70
If child not living...............   90
Ben,..............................   120
Eliza..............................   60

Witness went to the defendant before Warner bought the place, about it.    Defendant said if Warner did not want the place, witness could have it for $225.    Witness has since purchased the place from Warner, and sold it again to Palmer : to Warner, witness paid $400, and from Palmer, received for it, another place, $1050—about $500 for first place.

9th.  Leon P. Dugas, testified:

He was acquainted with Betsey before 1842.    She was worth then 300 to 330 dollars ;  Charles 4 to 500 dollars ;  Maria 300  dollars ;  Ben, 250 dollars ;  Eliza,  250  dollars.    In 1853, Charles worth 1200 dollars ;  Maria without the child 7 to $800 ; Ben, $800 ; Eliza 1000.    Hire in 1853, Charles, 150 to 180 dollars, and his average hire from '42 to '53, 90 to 100 dollars ;  Maria, 50  dollars ;  Eliza, 50 dollars ;  Ben  average 50 dollars for seven years.    In 1849, witness applied to Robertson, to purchase the slave, Eliza.    Robertson said,  he did not know that he could sell her, as he was bound to Warner.

10th.  Joseph Wimberly, testified :

That in a conversation with Robertson, in 1846 or 1848, he said he would not sell the Burke place on  credit, to any one but Warner, because he  had a lien  on him—would  not take Knight's note with witness as security.    This conversation occurred about the time of the sale of the land to Warner.

11th.  It was admitted on the part of the defendant, that he had recently sold the slave Ben, for $800.

The defendant offered the following testimony :

1st.  Such portions of the  answers of the defendant as are responsive to the bill, and to be referred to, as by the consent of parties annexed hereto.

2d.  Part of complainant's plea to the Common Law  action of defendant, in Burke County :

" And for further plea in this behalf,  this defendant says, that the plaintiff ought not to have and  maintain his said suit against this defendant, upon the  promissory  notes and other instruments in writing sued on, because, he  says, the said causes of action have not accrued within six years next before

the commencement of the plaintiff's suit, and of this he puts himself upon the country, &c."

3d. Samuel Warner's three notes, sued on in Burke County:

$528.33.                    AUGUSTA, Richmond County, Ga.

Twelve months after date, I promise to pay John Robertson, or bearer, the sum of five hundred and twenty-eight dollars and thirty-three cts. for value received.  his

                              SAMUEL X WARNER.

This, 16th April, 1842.                    mark

Dolls. 250.              AUGUSTA, 24th October, 1848.

On the first day of January next, I promise to pay to John Robertson, or order, two hundred and fifty dollars, for value received, with interest from the first day of January last.

                              his

                    SAMUEL X WARNER.

                         mark

Test, John C. Green,

                    and admitted to be for the purchase of Burke lands.

$40.                    AUGUSTA, March 11th, 1844.

Four months after date, I promise to pay to T. H. Bivins, forty dollars for value received of him.  his

                    SAMUEL X WARNER.

Witnessed by D. B. Edes.              mark

4th. The account of defendant, as stated in bill of particulars, to suit in Burke, admitted as proved by books of defendant, and Ede's depositions, to the whole amount set out, say $1760.69.

5th. Robert Philip testified to a demand by him, for defendant, of complainant, the slaves sued for in the action of trover in Burke County; that Betsey and William were worth $60 per year, hire, to that time, since the commencement of the suit, say, from 29th December, 1849.

6th. Thomas W. Miller, testified :

That defendant and complainant called on him to draw the bill of sale ; that there was not anything said about a mortgage ; that he thought it an absolute sale ; that there was nothing said or done differing from usual sales, and that he believed at the time that it was an out and out sale ; that Warner was indebted to sundry persons, (including Robertson) some of his notes held by the firm of Millers, as attorneys ; that Robertson assumed the payment of debts of Warner, for an amount, which, with (the debt to him) and his note, written by witness and signed by Robertson, and delivered to complainant at that time, made up the consideration expressed in the bill of sale. Claims on Warner, in the hands of witness' firm, and assumed by Robertson, were paid by him. The bill of sale to R. and note by him of same date, were both executed and delivered at that time, and on the day they bear date.

7th. William Glendening, testified :

Knew the slaves, Betsey, and her children then born, some twelve or fifteen years ago. They were offered by Warner to him, either by sale or mortgage, before the sale to Robertson. $1750 was a full fair price for the slaves at the date of the bill of sale to Robertson.

8th. Admitted that William Skinner, then Tax-Collector, would testify, that, in 1843, Warner, then residing in Richmond County, being called on by him for a tax return, said he had no property, or no property to return, and made a return of only one poll.

9th. James Banks, witness, testified :

In last of November, or first of December, 1849, Warner, at Robertson's store, in Augusta, said to witness, that since he last saw him, he had sold his negroes to Robertson, and that on a nice calculation, had been paid about or near $2400 for them. That he, Warner, had held Robertson's receipt, or other paper for money, but that it was now paid, and he gave it up. Had not seen Warner for about two years before that time.

10th. Extract from the testimony of David L. Curtis, examined 9th day of June, 1851:

" I formerly knew a negro woman, slave, and her children, in the possession of the complainant, viz: some twelve or fifteen years ago, but do not now recollect their names, except Charles, Maria, Ben and Eliza.   Warner offered to sell me the whole family of negroes—as well as I now recollect, there were about ten of them altogether.   They were offered for sale to me by Samuel Warner, some time during the year 1847, at my store in Augusta, on the corner of Broad and Kollock streets. They were offered absolutely, and no conditions mentioned. Warner offered the negroes for sale to me several different times ; he offered them to me as often as twice on the same day, at which time, he abused Robertson, stating that he, Warner, did not think that Robertson intended to treat him right in the purchase of the negroes ; (but on the next day after the above conversation, early in the morning, about sun-up, Warner came to my store, and stated that Robertson had made a full settlement with him for the negroes ; and I asked him if the negroes were Robertson's—and he replied that they were Robertson's negroes.)*   Warner told me that he had sold the negroes to Robertson, but stated to me, when he wanted to sell them to me, that Robertson had bought them, but would give them up, upon his, Warner's, paying him back what money he, Robertson, had paid him, Warner, with interest.   The amount, as well as I now recollect, was $2500 for the lot of negroes, and that he wanted $1700 in cash, to repay Robertson.   He, Warner, stated, that Robertson would let him have the negroes back, on his paying him the amount he, Warner, was owing, or had received from Robertson, with the interest.

The above and foregoing conversations took place at my store, as above stated.

Answers to 1st cross-interrogatory :

---

*The above, included in (  ) was admitted, not as evidence of a subsequent sale or settlement, but for the purpose of shewing the first sale absolute.

Warner *vs.* Robertson.

I had some three or four conversations with Warner after the sale of the negroes to Robertson, which I believe was in the year 1847. I refer you to my answer to the third direct interrogatory, in relation to what he, Warner, said in relation to the sale of the negroes to Robertson; and also, to what he said in relation to Robertson's letting him have them back. As well as my memory now serves, the last conversation I had with Warner, was in 1847.

Answer to 2d cross-interrogatory:

I have heard Robertson say, that he had bought the negroes from Warner, but Warner became dissatisfied, and he, Robertson, had promised to let him have the negroes back, when he, Warner, should pay him back what he had paid for them, with the interest; but have not heard him say that he had paid him, Warner, anything since. I had the last conversation with Warner, when Warner told me that Robertson had settled with him, and that the negroes then belonged to Robertson. I have never heard Robertson say that he held the negroes as security, but have always understood from both the parties, that it was a *bona fide* sale.

By consent of parties, the Court passed an order, allowing ten days after the adjournment of Court, to defendant, in which to prepare his grounds, with a brief of the testimony to be filed; and directing said motion to be argued at Chambers with leave to either party to except within thirty days after the decision should be made; and the parties entered into the following consent, in relation to the portions of the answers of the defendant relied on by him as evidence, as well as in relation to a portion of the testimony of Thomas W. Miller, as to which the parties could not agree, to wit:

It is consented, that such parts of the defendant's original and amended answers as are responsive to complainant's original bill, and as amended, be considered as part of the brief, (and that the originals or copies be used as required:) and it is further consented, that the said parts of defendant's answers which are responsive, and the foregoing pages, contain the testimony adduced on the trial—except as to two passages,

included in parentheses, introduced into the brief of T. W. Miller's testimony, in which defendant's counsel do not concur ; that as to these passages, counsel will try to agree on the subject, or arrange the matter satisfactorily ; and should they fail, then it will be submitted to the Court to determine whether or not Mr. Miller testified what is contained in those passages.

A. J. & T. W. MILLER, Complainant's Sol's.

J. C. & G. A. SNEAD, Defendant's Sol's.

26th February, 1853.

Judge *Starnes*, after hearing argument at Chambers, ordered a new trial, on the ground, that there was no evidence before the Jury, authorizing them to consider the contract between the parties as a mortgage, and thereupon the complainant, Warner, excepted.

The complainant assigned for error, that the Court below erred in holding and deciding that the verdict of the Jury was unsustained by, and contrary to evidence, in this, that there *was* evidence to sustain said verdict.

C. J. JENKINS and A. J. MILLER, for plaintiff in error made the following points :

1st. The verdict was not contrary to, but sustained by evidence.

2d. Parol evidence is admissible for the purpose of showing that an absolute deed was executed as a security. *Cobb's New Dig.* 274. *Hoffman's Chancery R.* 31. *Green's Ch. Rep.* 264. 6 *Vermont,* 448, 454. 13 *Ib.* 341, 349. *Ga. R.* 457. 1 *Howard's S. C. Rep.* 118. 1 *Porter's R.* 328, 357. 4 *Kent's Com.* 141, 142.

3d. The attempt to set up a claim under a deed, as an absolute one, when executed as a security, is a fraud. 1 *Howard's S. C. Rep.* 118. 13 *Vermont,* 349. 1 *Porter's Rep.* 357. 11 *Ga. R.* 401; 410.

J. C. SNEAD and HENRY H. CUMMING, for defendant in error, contended—

That the verdict of the Jury was contrary to, and without evidence:

1st. In this, that the bill of sale from Warner to Robertson, being absolute on its face, and there being no fraud, (as alleged in complainant's bill,) accident, mistake, or other circumstance, proven to show the intention of the parties otherwise at the time, parol evidence was incompetent to change the character of the contract from what the bill of sale imports, though the Jury, by the finding, held the bill of sale a mortgage. 7 *Ala.* 724. 1 *Dev. Eq.* 373. 5 *Leigh R.* 434. 13 *Ala.* 246. 9 *Yerger*, 172. *Stat. of Ga. of* 1837, *pp.* 110, 111, §180. 4 *Ga.* 106, 266. 5 *Ib.* 373. 9 *Ib.* 157. 1 *Iredell's Eq.* 221.

2d. In this, that the bill of sale of 15th April, 1842, being absolute, if the instrument of Robertson of the succeeding day can, in any manner, be connected with the previous transaction, it is not by way of defeasance, but only superadding a new agreement of contract of re-purchase by Warner, on conditions, and that the subsequent instrument, not being under seal, and no consideration being expressed, is a nude pact. 9 *Ala.* 24. 4 *Kent's Com.* (4th,) 144, *and n.* 145.

3d. That if the note of Warner to Robertson, of the same date, and the second instrument, be so connected as to form one transaction, and a consideration for a contract of re-purchase, then the time within which said re-purchase should have been made, having elapsed, Warner's right under them is barred. 2 *Yerger*, 6, 215. 9 *Ib.* 172. *Story on Contracts*, §§181, 182, 183, 665, 666. *Coote on Mortgages*, (38 *Law L.*) 64, 65.

*By the Court.*—WARNER, J. delivering the opinion.

The only question made by this record, for our consideration and judgment is, whether there was any *legal* evidence before the Court and Jury, at the trial of the cause, to authorize a verdict for the complainant.

On the 15th day of April, 1842, Warner, the complainant,

executed the bill of sale contained in the record, to Robertson, the defendant, for the seven negro slaves specified therein. On the 16th day of April, 1842, the next day after the bill of sale was executed, Robertson executed and delivered to Warner the following instrument in writing: "The said bargain between Samuel Warner and John Robertson is to certify, that whenever the said Warner pays all the demands that the said John Robertson holds against the said Warner, the property is to be refunded back to the said Warner." At the trial, this written evidence was admitted to be read to the Jury without objection.

The argument for the defendant' below in support of the judgment of the Court granting a new trial is, that there was no evidence to support the verdict, except such as is expressly prohibited by the Act of 1837 ; that the writing executed on the 16th day of April, 1842, by Robertson, did not relate to, and had no connexion with, the bill of sale of the negroes, executed on the 15th of April, but was evidence of, and had reference to a new, distinct and independent contract between the parties.

The Act of 1837 declares, " that *oral* evidence shall not be received in any Court in this State, to show that a deed or bill of sale, absolute upon its face, was intended as a mortgage, or security, for the payment of money, or any other thing, unless there is a charge of fraud in obtaining the same, in which case *oral* evidence, going to show the fraud only, may be received, any law, usage, custom or practice to the contrary notwithstanding." *Cobb's Digest,* 274.

Did the written instrument executed and delivered by Robertson to Warner, on the 16th of April, have reference to *the bargain* made between the parties the day before, of which the bill of sale is the evidence, and was it the understanding and intention of the parties thereto, that it should have such reference, and constitute a part thereof ?

The *written evidence of the bargain,* as manifested by *the bill of sale,* executed on the 15th of April, did not certify, up-

on its face, that whenever Warner paid all demands that Robertson held against him, *the property was to be refunded back to Warner;* but on the 16th of April, Robertson declares, in writing, that *the said bargain* shall certify *that fact.* What *bargain* shall so certify and declare?

This written evidence, most unquestionably, had reference to *a bargain* which had previously been made between the parties, and to a bargain which had been made in relation to *property.* What *bargain* made between the parties, and to what *property* did the written evidence have reference to, was the question for the Jury to decide, from the evidence before them; and two special Juries have decided, by their verdict, that it had reference to, and was a certificate, or declaration in writing, on the part of Robertson, that the bargain, bill of sale, or contract, made on the 15th April, between the parties was, that whenever Warner paid all demands that Robertson held against him, the property was to be refunded back to said Warner—in other words, the writing executed on the 16th April, was intended to certify and declare, that the bill of sale executed on the 15th April, was merely a *security* for the payment of all demands which Robertson held against Warner.

The Act of 1837, excludes *oral* evidence. The instrument in writing, executed on the 16th April, admitted in evidence to the Jury without objection, was not *oral* evidence : it was *legal* and *competent* evidence for the consideration of the Jury. The only doubt which could have existed, was as to its application to *the bargain* or contract, made on the 15th of April. In order to remove that doubt, and to show its application to *that bargain,* the declarations and conduct of the parties in relation to the property, were admissible. For if that instrument in writing, executed on the 16th of April, had reference to *the bargain,* or contract, made between the parties on the 15th of the same month, and *the property* embraced therein, then the question is a clear one against the defendant in error; and now to set up an *absolute* title to the property, would be a gross fraud upon the rights of the plaintiff. The testimony of Knight,

Kelly, Dugas and Wimberly, is pretty strong evidence to show that the defendant understood the written certificate or declaration, executed by him on the 16th April, applied to the bargain or contract made between himself and the plaintiff the day before. He did not treat the property as his own, absolutely and unconditionally. Why did he not so treat it? Because he knew that he had executed an instrument in writing, the day after the bill of sale was executed, certifying and declaring, that "*the said bargain* between himself and Warner was, that whenever Warner paid all demands that he held against him, *the property was to be refunded back to the said Warner.*"

In our judgment, there was legal and competent evidence before the Jury, to maintain and support their verdict, over which the Court had no legitimate control.

It has, however, been insisted that this Court will not control the discretion of the Court below, in granting a new trial. The new trial was granted in this case, on the ground that there was no legal and competent evidence to support the verdict of the Jury. Upon an inspection of the record, we are of the opinion, that there is legal and competent evidence to sustain and support it; that it is not merely a question of *discretion*, but a question of *law*—for if there is *any evidence* which is properly the subject matter of consideration by the Jury, it is against *the law* for the Court to set aside their verdict.

[2.] Perhaps there is no one feature more *indelibly* stamped upon our system of jurisprudence in this State, than that which submits all questions of fact *exclusively* to the consideration of the Jury. The Court decides the law—the Jury find the facts, upon the evidence submitted to them by the Court.

Let the judgment of the Court below, granting a new trial in this case, be reversed.